If it pleases the Court, my name is Michael Bigelow, and I represent appellant in this matter. My argument is actually probably going to be relatively short, so I will undoubtedly reserve some time. The issue that I wish to address is the four-level bump that Mr. Viramontes did, his conduct qualifies him as an organizer. And I've read carefully the government's cited case, which is actually a Ninth Circuit case, the Snow decision, I mean, a Tenth Circuit case rather than a Ninth Circuit case. And the government argues rather extensively that what Mr. Viramontes did, his conduct qualifies him as an organizer along the lines of Mr. Snow's conduct. But if one reads the language in the Snow decision, in fact, we see that the conduct is more akin to Mr. Martin's conduct than Mr. Viramontes' conduct. What Mr. Snow did was not an organizer. I'm sorry. Was he not an organizer? I don't think he was an organizer, no. He did none of the things that an organizer does. Well, except he came up with the whole scheme, apparently. He didn't come up with the whole scheme. Somebody else came up with the whole scheme. He had the scheme. He talked to Mr. Martin about the scheme prior to the event. Where's the someone else? I mean, I don't mean that he made it up, but he put this group together to do it. He didn't put the group together. The group came together. The group was together before the scheme was devised.  And then he said to them, here's a scheme. He what? My understanding is that he said, well, here's a scheme. Here's how we can do this. No. That's the government's understanding, and that's the government's brief. But that is not what transpired. The scheme, if the scheme came together, the scheme came together at the Rusty Duck. Prior to that, Martin and Viramontes had engaged in fraud along these same lines. There's no question about that. If one believes Martin's testimony, and we have no reason not to under the circumstances. But that was in 2004, 2005. Then Fellini got involved in it. They were working together. The three of them were working together at that point, and they were doing loans, and they were probably doing fraudulent loans at that time. Then they decided that they decided, not one person, but they decided that, okay, we need a new broker. So let's get a new broker. And so they met at the Rusty Duck. Now, who did a lot of the talking at the Rusty Duck? Yeah, Viramontes did a lot of talking at the Rusty Duck. But in addition to that, Martin did a lot of talking at the Rusty Duck. Now, if that is the genesis of the scheme, fine. But that doesn't mean that he is an organizer. An organizer is set out, the elements of organization from this perspective, set out pretty well in the Snow Case. What do you have to do to be an organizer? Well, the Snow Case tells us what you have to do to be an organizer. And this is what the government is relying on. Okay. It teaches the co-conspirators how to conduct and conceal the scheme. Snow inflated the price of the homes. Snow found homes for sales. He coached others how to submit false information. That's what an organizer is, at least according to the Snow Case, which is the case relied on by the government. Recruit individuals into the scheme. He didn't do that. He didn't bring Huang in. He didn't bring in – we'll talk about Huang in a minute, if we may, if I get there. He didn't bring in Wareheim. He didn't bring those folks in. He didn't recruit those people in. He didn't recruit the investors. But there was reasonable evidence that he exercised management responsibility, correct? Your Honor, I've got to ask you to repeat that. Oh, I'm sorry. There was evidence in the record that supported the conclusion that at least he exercised management responsibility. There is no evidence that he exercised management responsibility. Well, he was supposed to. None. There is absolutely no evidence at all that he exercised management responsibility. The only thing he managed, and I use that term advisedly, is the rental homes. That's it. Well, it says property, right? Those are property. But listen, this is a commentary to the aggravating role an organizer. An upper departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of that criminal organization. But that does not make, in the case I cite in my brief, and I can't find it right now, but the case I cite in my brief says that if that's all he does, that's not doesn't qualify him as an organizer. But he was at the meeting in which this was explained to Gallo, and he did a great deal of the explaining. He seems to have brought this VMF group together. He, to begin with, he, or VFM or whatever it's called. VFM. He had, when people had problems, they, a lot of them called him. I understand they talked to Martin, but a lot of them also talked to him. Then they had the meeting where they sort of threw in the towel, and there he was saying we can't do this anymore. So it certainly has every appearance that he and Martin were, and he got 50 percent of the profits, which certainly suggests that within the group, he was looked at as co-equal to Martin. Well, I respectfully disagree, almost 100 percent. The only person who referred problems to, the only person who referred problems to Jaramonis was Gallo. If a borrower, Gallo is the broker in all of this. He would sometimes call Jaramonis. He's the only one who deferred to Jaramonis. Martin, in fact, told Huang, everything goes through me. I'm the man. I add the last part. Well, I mean, there can be more than one organizer. There can be more than one organizer, but there can be more than one leader. Yes, there can be more than one organizer, but none of the things that he did qualify him as an organizer. And let me leave that for just a second, because I don't think he was an organizer. I don't think the record supports that he was an organizer. It is my submission that he was not an organizer, nor was he a leader. And the only thing that the government can point to to show that he had leadership capabilities was, because the two are different, is that he was a leader in all of this, is an e-mail that was written in August, and they submit that as part of their 235 of their supplemental excerpts of record. And this is the only leadership evidence the government provides. In a CC to Fellini, the e-mail was to Martin, I think, but it's a CC to Fellini, and he asks Fellini, call Joe and ask him for our money. Now, that is, as far as the government is concerned, evidence that he is a supervisor, at least, of other individuals. And I want to say that that couldn't be further from the truth, and I want to give you a short example, a quick example, and that is that I'm going to say often, but probably more times than CJA panel members care to count, we are called upon to e-mail the person who supplies us with cases, the panel administrator, and we say, hey, can you call the court and ask them where my money is? Sign off on my voucher. Now, I'm no more a supervisor, and the CJA panel members are no more supervisors of the panel administrator, and certainly not of the court, than Mr. Vera Monning's was a supervisor of Mr. Fellini. The other point that I would like to make in all of this, and that is that, and I know the panel members know this a little bit, but the district court judge made no specific findings, and yes, I know, and I tell you in my brief, I know, that the district court judge doesn't have to make findings. But you know, the Second Circuit, the Second Circuit, says that you do, that I'd rather be in the Ninth, except maybe on this point. But my question to the court is this. If the district court doesn't make findings, what do we review? What does this court, what does a reviewing court review for clear error? Are we back to de novo review? Do we just accept the court that the district court judge made no findings? I mean, they weren't very specific. Yeah. Right. I mean, I don't know what they were based on. Well, basically, it was. I don't know what they were based on. He had to have been the organizer because somebody organized it, and he was there and, I mean, as I understand it, he was there at every relevant time appearing to be the organizer. But part of my argument in sentencing was that there were not five, more than five participants, or five participants or more. Part of my argument was that Wang and Wertheim were not members of this grand scheme. Why is that? Why was that my argument? Well, there's Gallo, Wang, Wertheim, Martin, Fellini. Why were they not? Yes. They were the realtors. They weren't in fact. Yes, but they obviously knew exactly what was going on and were complicit in it all. Obviously. Who made that finding, Your Honor? Well, I read the Wang testimony, and she said she knew it was illegal and she understood what they were doing and she went along with it. That's what she said. The government argues only that they had knowledge in their brief. In their brief, they argue only that they had knowledge. Never once, anywhere, to any of my objections, did they argue. They were giving kickbacks. Does the government argue that they had the intent? To do what? To defraud. No intent, no fraud, which is all spelled out in my brief. Never once do they argue that they were, that they had the intent. Well, what does that mean? They understood that they were putting through, they were getting people to buy houses that they were not entitled to buy and to, because they were not living in the houses and they were giving kickbacks to, as I understood it, to BFM for doing that, and so why aren't their purchases paid in the fund? Let's put a cap on it. In a five-month period of time, 6% interest, given the volume that they sold, they generated probably close to $400,000 worth of commissions. They didn't get indicted. Well, they didn't get indicted, but there were, it seems to me, they could have, clearly could have been indicted as conspirators. They could have been indicted. But they weren't. But they weren't. And the government does not argue, and why? Because they didn't have the intent to defraud, apparently, because the government doesn't argue they had the intent to defraud. Circumstantial evidence notwithstanding. Look at their brief. Their brief, in their brief, they say, yes, they had the knowledge that this was wrong. I don't argue that they had the intent to defraud. Now, it seems to me that you've got to have the intent to defraud. Otherwise, you're not criminally liable, either as a principal or as an aider and a better, and thank you for your patience. Yeah. We'll hear from the government. May it please the court. Michael Anderson on behalf of the United States. I was also trial counsel in this case. Viramonte's got the ball rolling in this scheme. He learned it from someone else, and then he recruited Martin Fellini in court, encouraged them to form VFM, and found Joseph Gallo, a corrupt broker, to whom he helped explain the scheme and get Gallo operating for VFM. Viramonte's also helped pitch the program to straw buyers. He found one of the two kickback-paying real estate agents, and he ran the scheme within a scheme where he convinced Martin and Fellini and the straw buyers that he had pre-approved renters waiting to move into the homes. Under those circumstances, the district court did not commit clear error in finding by preponderance that he was a leader and organizer of five or more of the participants. Wong and Wareheim knew that what they were doing was wrong. They knew they were making false statements, which shows an intent to deceive or cheat, and they were criminally liable, although not charged in this case. And that's all based on the facts and the record, and I'd be happy to answer any questions the court has on this issue or anything. What is your intention of the new mortgage broker? What about the intention of the people that were not charged? Yes, Your Honor. The people who were not charged knew that they were making false statements. They were both experienced real estate professionals. They were both real estate agents, and in Wareheim's case, she was not only a real estate She sold the loan products and explained to buyers what those loan products were, including BFM. She was their point of contact between Who did they have the intent to defraud? The buyers or the banks or whom? The banks, Your Honor. You heard the other side argue that they needed an intention. What's your answer on that? I'm sorry, Your Honor. I didn't like You heard the other side argue there was need for an intention as well as knowledge. What was the intention to defraud on the part of these other people? The intent to defraud the banks, Your Honor, is that they had the intent to deceive or cheat the banks by submitting documents that said that the homes were going to be owner-occupied, which permitted 100 percent financing, when the real estate agents, both Wong and Wareheim, both knew that they would not be owner-occupied. They knew that for a couple of reasons, because they're buying multiple So you're saying that the real estate agents had the intent. Are you saying that? Yes. They had the intent to deceive or cheat, Your Honor. They essentially had the intent to get loans that they would not have gotten had they not made a misstatement, had the misstatement not been in there. Exactly, Your Honor. Because they intended to sell the house to these people, and with that comes the loans they couldn't sell the house to these people. Right. Right. And they needed to sell the homes in order to get the commissions, and they had to make the owner-occupied false statement on the loan applications and on the purchase agreements and the other documents in order to get the 100 percent financing, which made the scheme profitable. But are you relying on the five or more participants or the otherwise extensive? And if it's otherwise extensive, that seems terribly amorphous. Yeah. I think that we get there easily on the five or more. It would otherwise be otherwise extensive for reasons I lay out in the brief. But we get the four individuals that defense concedes, that's Viramontes, Martin, Fellini, and Gallo. And then we need one more to get over five, and we have the two real estate agents. So you have Was Gallo prosecuted? Yes, Your Honor. And he was convicted as well, or he pled guilty. So then you have the two real estate agents, Wareheim and Wang. You get six with them. You also had two straw buyers who admitted that they knew what they were doing was wrong. So theoretically, you could get there that way, but it's very strong on the two real estate agents. Is any negative inference to be drawn from the fact that they weren't prosecuted? I understand that they don't have to be prosecuted, but since they were so obviously apparently involved, don't we – couldn't we think, well, the government thought you had a problem prosecuting them, you had some proof problem? I don't think the Court should draw that inference, Your Honor, given the – given – without getting too far outside the record, there's a lot of fraud that occurred in the mortgage crisis, and the government targeted the people who are most responsible for those types of fraud. So I don't think that there's anything in the record that would suggest you shouldn't And in any event, the case law doesn't require and the guidelines don't require us to have prosecuted somebody. It's merely that they're criminally liable. If we needed to get by to the otherwise extensive, what do we think that means? That's a tougher question, and that's why I think the five or more is the easiest way to get there. Otherwise extensive, I think, means the involvement of a lot of different people. In this case, you have – you have the kind of four people in the core group that were prosecuted. You have your two real estate agents. You have many – you have multiple straw buyers. You have all the other types of individuals who would need to be directed. It's otherwise extensive, meaning a lot of people, even though some of them aren't criminally liable? Yes, Your Honor. Not a lot of money or a lot of sales or a lot of – I mean, that's the thing. I don't know whether we're referring to the people working on it or what we're looking at. I think in this case, it's – people is the – is the thing that most makes it otherwise extensive. But there were also a lot of properties. It was an extensive scheme. There were a lot of properties involved. How many were there? Like 30? Yeah, about 30. I think we focused on 19 of them during the trial. There were maybe 25 that were talked about. I don't have the plea agreement in front of me. I was looking for it. What did the government agree to with respect to this in the plea agreement? With respect to the organizer enhancement? The plea agreement with Martin – so Viramontes was a trial, but Martin, the plea agreement didn't include any role enhancement. The probation officer came back and said that a role enhancement was appropriate. The government maintained its agreement, but the court found that a role enhancement was appropriate. Right. Yeah, but I mean, with respect to the co-defendant, you basically took the position that – you agreed to the position that he was an organizer, and clearly he had more to do than Viramontes did. Right? Well, I think – Or at least they were co-equal. In the – in the plea agreement, that's right. In the plea agreement, we had done no role enhancement. That's true. Why? I don't know. I wasn't on the case at the time. I see. I – I wanted to – when you have a plea agreement that says one thing, you have to be careful, but we were – I think probation got it right. They were correct. A role enhancement should have been applied. We made a mistake on the plea agreement. Can I draw your attention to some of our case law on this question of what has to be found by the district court? I'm looking at the United States against Carter, which says that a defendant is eligible for a sentence enhancement, but generally does not require specific fact-finding. But more is required when a defendant contests specific factual statements made in the PSR. And then they have federal rules similar to Procedure 32, provide the sentencing court must, for any disputed portion of the sentence report, rule on the dispute or determine that a ruling is unnecessary. And, again, it is well-staffled in this circuit that when the district court fails to make the required 32 findings at the time of sentencing, we must vacate the sentence and remand. As from U.S. against Doe, 706, Chapter 1134, 19, 2013. So how do you respond to that? Yes, Judge Newman. In this particular case, the court did make factual findings that the enhancement did based on a very thorough record that we had from the trial. And what are those findings? Your Honor, the finding was that the enhancement did apply, and the court responded to the specific argument of defense counsel that he wasn't an organizer. And the court said, essentially, no, if I were to believe that, I would have to believe that this came out of nowhere, which was consistent with the testimony. Are there explicit factual findings that the five or more were involved? Are there specific factual findings? Will you answer that? Your Honor, the finding would be found in the PSR. So in paragraphs 32... So did the court make any findings? I don't think the court explicitly said there were five or more involved, I think. All right, but now how does that square with precedent? This is well settled. The district court has to make the 32 findings. Your Honor, I believe it's implicit in what the court is saying. The court is responding to briefing and arguments of counsel and specifically rejects the argument of defense counsel and states that it's going to apply that enhancement, which is also covered in the PSR. And I think by doing that, the court has indicated that it's making that finding. Well, it indicated that our precedent says that the findings must be explicit. You are not citing to any explicit findings, I understand it. Are there explicit findings? In the sense that the court said I specifically find that there's five or more, that's not in the record. There are no explicit findings. Do we agree? Do you agree there are no explicit findings by the court? Your Honor, I agree that the court doesn't specifically say five or more, but I believe that... No explicit finding then, right? Isn't that true? Will you answer yes or no? Yes, Your Honor. All right. You said the presentence report was specific about this. Did it find that the two real estate people were participants? Yes, Your Honor. By name? It references both Wareheim and Wong. As participants. By name in paragraphs 32 and 33. As participants. But then the court did not comply with the Federal Rules of Criminal Procedure 32. What I was about to ask was there's some caseload, I don't know whether it applies here, that if it's in the PSR, that does the district court then have to explicitly adopt it? Well, that's what the... It was against Codd's says and it was against Hill's says. It was Hill that decided last year. So the question is, in this case, did the district court adopt these findings specifically? It's a very explicit finding that we... A program we laid out. And you may get the finding when it goes back, but you didn't get it. I'm sorry, Your Honor. I can't... You may get the finding you want when it goes back, but you did not get it. You did not get the explicit finding that our very recent precedent says are required. Your Honor, I apologize. My hearing is not that good. Well, my speaker phone may not be great, too. You did not get the explicit finding that the United States against Codd's said only Austria is required. You agree? He's asking you specifically on the Rule 32 issue, United States versus Carter. Let me follow up on that a bit. First of all, was there an independent adoption of the PSR findings? Your Honor, I don't know that he specifically says I adopted... So if there's not a general adoption of the findings, here's what we have in the record as I see it. The district court says the court rejects the portion of the plea agreement and agrees with the pre-sentence report. And then he goes on to say, to accept Veramonte's arguments, I would have to believe that this fraudulent, sophisticated scheme came out of nowhere and that no one put it together and no one was a leader and that's impossible. So I gather that's the extent of the findings we have in this case. So he says he agrees with the pre-sentence report. Doesn't say he adopts it, but he agrees with it. Right. And then he says basically he rejects the Veramonte's arguments. Is that what we have? Yes, Your Honor. Okay. And I think Judge Nunes' question is how does that comply with Rule 32? Your Honor, I believe it's clear from what was said by the judge and what Your Honor, that the court was adopting that portion of the PSR. It was clear to the parties. This was an issue that following the trial and the extensive record that was put forward didn't require a lot of explanation. It was fairly clear based on the trial testimony that Veramonte was a leader and organizer of this. Well, let me draw your attention to the exact words of Rule 32. A sentencing court must, for any disputed portion of the pre-sentence report, or other controverted matter, rule on dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing or because the court will not consider the matter in sentencing. Now, the matter did affect sentencing and the court did consider the matter in sentencing. So the court violated, explicitly violated, the Rule 32. And Your Honor, our position is that he sufficiently made a record that asked this court to review. No, you let him violate the Rule. Don't, don't. No. You'd like to have a different Rule, but that's not the Rule. Your Honor, we, we believe that he, although it would have certainly been advisable for a more detailed. Well, now, wait a minute. How did they comply with Rule 32 or not? Your Honor, we believe he did by making a. How did they comply with Rule 32? He put forward the reasons that he thought that the enhancement should apply. Well, is the statement that he agrees with the pre-sentence report essential and is it sufficient? Yes, Your Honor. Well, I don't know if it's essential, but given the, the scarcity. Well, it has to be essential given, given what Rule 32 says. It says that if you disagree with the pre-sentence report, he has to, it says a dispute over the propriety of the pre-sentence report, which there was. So therefore, he has to say, but he did say, he said he agrees with the pre-sentence report. Right. And he essentially, by doing that, adopts what the pre-sentence report is saying rather than, there's, there's not any great advantage to the court reading into the record word for word what the pre-sentence report says. He, he adopts what's said there and adopts that reasoning and also references the trial record through his statement that was in the record. If there are any other questions, I'd be happy to answer them. I see my time is up. Well, Rule 32 says that when a defendant contests specific factual assignment, you're making a mockery of the rule if you say that. Then the judge can disregard the dispute and just say, I agree with the PSR. You are, you are explicitly disregarding the language of 32. Certainly not my intent, Your Honor. Thank you for your time. Okay. We'll hear rebuttal. Thank you very much. Okay. Very good. The case to assert will be submitted for decision.
judges: Noonan, Thomas, Berzon